IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **DONALD KLEIN,** | |
| **Plaintiff/Relator,** | Case No. 3:19-CV-563-NJR |
| v. | FILED UNDER SEAL |
| **A ADVANTAGE FORWARDERS, INC.,** *et al.*, | |
| **Defendants.** | |

## <u>SEALED ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Relator Donald Klein's Amended Motion to Voluntarily Dismiss without Prejudice and Maintain Seal for Three Years. (Doc. 89). Relator asks the Court to dismiss the case without prejudice, but maintain the case under seal for three years. The United States consents to the voluntary dismissal of this case without prejudice, but opposes Relator's motion to keep the case sealed for three years. (Doc. 93). It further moves the Court to unseal the Complaint, Relator's first motion to dismiss, its response, and all subsequent filings in this action. (*Id.*). For the reasons set forth below, the Court denies Relator's motion to maintain the seal for three years, grants Relator's motion to voluntarily dismiss, and grants the Government's motion to unseal.

### BACKGROUND

This *qui tam* action was filed in February 2016 in the United States District Court for the Eastern District of Virginia (Doc. 1); it was transferred to the Undersigned Chief District Judge on May 28, 2019 (Doc. 54). Relator is the principal of international

transportation service provider ("TSP") Allstates Worldwide Inc. (Doc. 87). The United States Transportation Command (USTRANSCOM) contracts with TSPs like Allstates to ship the household goods of U.S. armed services personnel and their families between posts in the United States and overseas. (Docs. 87, 88). TSPs performing international shipments must certify annually to USTRANSCOM whether they are under Common Financial and/or Administrative Control (CFAC) with another TSP, *i.e.*, whether they control, or are subject to the control of, another TSP. A TSP that is in CFAC with another TSP is only permitted to perform certain international shipments under restricted circumstances. (*Id.*).

Relator's Complaint, filed under the False Claims Act, 31 U.S.C. §§ 3729-3732, *et seq.*, alleges that the Defendant TSPs wrongfully obtained thousands of international shipment contracts that they otherwise would have been prohibited from obtaining by falsely representing they were not in CFAC with another TSP. (Doc. 1). As a result of the Government's investigation into Relator's claims, the Government issued Civil Investigative Demands to certain TSP Defendants, requiring them to provide tens of thousands of documents. (Doc. 68). In May 2018, USTRANSCOM issued a notice to Coleman World Group, LLC ("CWG"), the largest coordinated group of TSPs, that it would convene a Transportation Service Provider Review Board (TRB) to determine whether the Coleman Group TSPs were in CFAC. (*Id.*). After a hearing in November 2018, the TRB issued a decision finding that the 11 CWG TSPs were in CFAC and should not have been performing international shipment contracts. The TRB decision imposed a two-year suspension on the Coleman TSPs. (Doc. 91).

On September 21, 2021, after a number of extensions of the intervention deadline, counsel for the Government advised Relator's counsel that the United States planned to seek authority to decline intervention in this matter. (Doc. 88). Relator then filed a motion to dismiss and permanently seal the action on October 1, 2021. (Doc. 86). He later amended his motion to seek a three-year seal over the case. (Doc. 89)

In his motion, Relator states that he is a competitor of Defendants, including CWG. He asserts that CWG has wide influence and power in the relocation services industry, and he fears retaliation if the filings in this action are unsealed and his name is made public. Accordingly, he asks the Court to maintain the case under seal for three years from the date of dismissal to give him time to wind up his business affairs and retire from the industry. Relator notes that he seeks to dismiss the action before any decision on the merits has been reached, and that unsealing the action would hinder future *qui tam* claims by individuals who fear retaliation by stepping forward—factors that favor keeping the case sealed.

In response, the Government consents to the dismissal of the case and moves the Court to unseal the Complaint, Relator's initial motion to dismiss, and all subsequent filings. It opposes a three-year seal on the entire matter, however, arguing that the False Claims Act (FCA) does not provide for a continued seal over *qui tam* complaints once the United States has made its intervention decision. In the absence of any authority in the FCA for Relator to seek a temporary extension of the seal over his complaint, the Government argues, Relator must overcome the strong presumption toward public disclosure of court files by meeting his burden of showing good cause for keeping the

documents sealed. The Government contends that Relator has failed to meet his burden, and his motion to keep the case sealed must be denied.

## DISCUSSION

Both Relator and the Government agree that dismissal of this case is proper, and Relator has not opposed the Government's motion to keep certain documents, including its motions for extension of the intervention deadline, sealed. Thus, the only question is whether the entire case file should remain sealed for a term of three years.

Under the FCA, a whistleblower can file a civil action on behalf of the Government against any person who knowingly presents false or fraudulent claims for payment or approval to an officer or employee of the government, makes a false statement material to a false claim, or conspires to do either. 31 U.S.C. § 3729(a)(1)(A)-(C). The complaint shall be filed *in camera*, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. 31 U.S.C. § 3730(b)(2).

Once the Government is served with the complaint and material evidence, it has 60 days to decide whether it will intervene and proceed as the party responsible for prosecuting the case. *United States ex rel. Evans v. RehabCare Grp., Inc.*, No. 1:15CV80 RLW, 2016 WL 8234943, at *1 (E.D. Mo. Dec. 2, 2016) (citing 31 U.S.C. § 3730(b)(2), (3)). The Government may move for an extension of time of the intervention deadline, during which time the complaint remains under seal. *Id.* "[T]he primary purpose of the under-seal requirement is to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene in the case filed by the relator." *Id.*

Although the FCA permits the case to remain sealed while the Government

decides whether to intervene, "there is nothing in the FCA evincing a congressional intent to impose a *permanent* seal over all *qui tam* suits where a relator seeks to voluntarily dismiss the action after the Government declines to intervene." *Id.* (quoting *United States ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 784 (E.D. Mich. 2008) (emphasis added)). Instead, the text of the FCA and the imposition of a 60-day time period for sealing the complaint reflects legislative intent to have the seal lifted after the Government decides whether to intervene. *Id.* at 785 (citing *United States ex rel. Erickson v. Univ. of Wash.*, 339 F.Supp.2d 1124, 1126 (W.D. Wa. 2004) ("The FCA clearly contemplates the lifting of the seal on the relator's complaint.")).

If the FCA itself does not provide for a permanent seal, then a relator must demonstrate a compelling need for secrecy that overcomes the presumption of public access to judicial records in order to justify maintaining the case under seal. *See id.*; *Herrera*, 665 F. Supp. 2d at 785. This is because the "[g]eneral rule is that the record of a judicial proceeding is public." *Jessup v. Luther*, 277 F.3d 926, 927 (7th Cir. 2002) (citing *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 509–10 (1984); *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000)). This presumption in favor of open access allows the public to know who is using the courts, to understand judicial opinions, and to monitor the judiciary's performance of its duties. *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013). Still, that presumption can be overcome where there is a compelling need for secrecy. *Id.* For example, when a case involves "trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed." *Jessup*, 277 F.3d at 928.

This Court has not found, and Relator has not cited, any FCA case where a relator's fear of retaliation, economic harm, or damage to his professional reputation or career has overcome the presumption of access to court records. In *Herrera*, the relator—a nurse— filed a *qui tam* case against her former employer. *Herrera*, 665 F. Supp. 2d at 784. When the Government declined to intervene, the relator sought a permanent seal over the case because she feared for her economic safety and career in the healthcare industry if she were to be exposed as a whistleblower. *Id.* Finding nothing in the FCA suggesting that a *qui tam* complaint can be permanently sealed, the court then analyzed whether the relator's request for a permanent seal overcame the strong presumption in favor of access to judicial records. *Id.* The court noted that while public access to judicial records is not absolute, the presumption in favor of public disclosure is not easily overcome—especially where the filings involve matters of concern to the public, like allegations of fraud against the government. *Id.* (citations omitted). While the relator asserted that her reputation and career would be in jeopardy if the complaint were unsealed, the court found that concern insufficient to overcome the presumption in favor of public access to court filings. *Id.* at 785-86. Accordingly, the relator's motion for a permanent seal was denied. *Id.* at 786.

The relator's motion to permanently seal the record likewise was denied in *U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64 (D.D.C. 2011). There, the relator also cited potential retaliation from his employer in asking the court to permanently seal the record. *Id.* at 66. In discussing the need for public access to court proceedings, the court observed that FCA cases "receive special consideration because they 'inherently implicate the public interest.'" *Id.* at 67 (quoting *United States ex rel.*

*Littlewood v. King Pharms., Inc.*, 806 F. Supp. 2d 833, 840 (D. Md. 2011)). "Taxpayers are 'real parties in interest' in FCA cases because they possess a strong interest in fraud committed against the United States that results in monetary loss to the Government." *Id.* (quoting *United States ex rel. Schweizer v. Oce, N.V.*, 577 F.Supp.2d 169, 171 (D.D.C. 2008)); *see also U.S. ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007). Furthermore, the *Durham* court reasoned, a relator should expect that the pleadings in an FCA case will eventually be unsealed. *Id.* When deciding to bring suit under the FCA, the relator "concluded that these risks were worth taking if the Government would intervene. Having assumed the risk that the Government might not intervene, relator cannot cherry pick the portions of the FCA that suit [him]." *Id.* (quoting *King Pharms., Inc.*, 806 F. Supp. 2d at 842).

Here, Relator asserts that he may face economic retaliation if the case is unsealed and his identity becomes known to CWG, his competitor. He also asserts that he is an "informer" and, therefore, requires protection. *See Jessup*, 277 F.3d at 928 (a case involving the identity of informers may constitute a compelling need for secrecy). But while the Court, like the Government, is sympathetic to Relator's concerns, his fear of possible retaliation by CWG is speculative and could be argued by any relator who decides to sue under the FCA. And to the extent he claims he is an "informer," any harm he would suffer for being labeled an informer would be economic. That simply is not enough to overcome the presumption of public access to court records and does not justify a semi-permanent seal over the case. *See U.S. ex rel. Eberhard v. Angiodynamics, Inc.*, No. 3:11-CV-556, 2013 WL 2155327, at *3 (E.D. Tenn. May 17, 2013) ("[T]he mere possibility, or even plausibility,

of some form of economic harm is inadequate to depart from the rule favoring public access, particularly in the absence of any concerns involving national security, trade secrets or personal safety."). Accordingly, Relator's motion to maintain the seal over this case for three years is denied.

## CONCLUSION

For the reasons stated above, Relator's Donald Klein's Amended Motion to Voluntarily Dismiss without Prejudice and Maintain Seal for Three Years (Doc. 89) is **GRANTED in part and DENIED in part**, and the Government's motion to unseal certain documents (Doc. 93) is **GRANTED**.

The Clerk of Court is **DIRECTED** to unseal the Complaint (Doc. 1), Relator's first Motion to Dismiss (Doc. 86), and all subsequent filings, including this Order. All other filings shall remain under seal.

This action is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: January 11, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**